UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                          CASE NO.

**RICHARD EDWARD HUNT**                          **18-10802**
                                                SECTION A
ALLEGED DEBTOR                                  INVOLUNTARY CHAPTER 7

## <u>REASONS FOR DECISION</u>

On March 30, 2018, Issis R. Elwin ("Elwin") filed an Involuntary Petition[1] under Chapter 7 of the Bankruptcy Code naming Richard Edward Hunt ("Hunt") as the alleged debtor.  She filed a Motion to Waive Filing Fee on April 18, 2018.[2]

On April 18, 2018, Hunt filed an Answer,[3] contesting the Involuntary Petition.

Hearing on Hunt's Answer and Elwin's Motion to Waive Filing Fee came before the Court on May 14, 2018.

The Court entered oral reasons and an Order on May 14, 2018, granting the Motion to Waive Filing Fee; dismissing the Petition; and denying punitive damages.[4]

Elwin filed a Motion requesting that this Court enter written findings of fact and conclusions of law.[5]  Elwin also filed a separate Motion seeking that her request for written reasons be heard on special setting.[6]

---

[1] P-1.

[2] P-8.

[3] P-9, 10.

[4] P-17.

[5] P-18.

[6] P-19.

On June 20, 2018, the Court entered an Order granting, without hearing, Elwin's request that it enter written findings of fact and conclusions of law.[7] This Reasons for Decision constitutes the Court's findings and conclusions in connection with its Order dated May 14, 2018.   A new Order will not be entered.

## I.  Findings of Fact

On April 26, 2011, the Civil District Court for the Parish of Orleans ("State Court") entered an Order requiring Hunt to pay Elwin $234.00 per month in child support.[8]

On November 8, 2013, the State Court increased the child support award to $712.00 per month.[9] Then on January 22, 2016, the State Court granted Hunt's Motion for New Trial on the amount of child support and scheduled a hearing on January 25, 2016.[10]   The hearing was continued and has not yet been held.

On March 30, 2018, Elwin  filed an Involuntary Petition[11] ("Petition") under Chapter 7 of the Bankruptcy Code naming Hunt as the alleged debtor.  She filed a Motion to Waive Filing Fee on April 18, 2018.[12]

 In the Petition, Elwin claims that Hunt owes her $50,353 in accumulated court-ordered child support; $250,000 in damages for harassment and personal injuries; and $1,000,000 in damages for

---

[7] P-24.

[8] P-9.

[9] *Id.*

[10] *Id.*

[11] P-1.

[12] P-8.

2

injury to her minor child for a total amount claimed of $1,300,353. These claims are unliquidated and disputed by Hunt. She also contends that Hunt is not paying his debts as they become due.

Worksheets prepared by the Child Support Enforcement Division of the Orleans Parish District Attorney's Office ("Worksheets") reflect that Hunt owed Elwin $2,506.49 at the end of March 2011.[13]  The Worksheets reflect child support payments by Hunt of $3,103.51 from April through December 2011; $4,043.71 in 2012; and $3,024.78 in 2013.

On April 18, 2018, Hunt filed an Answer[14] contesting the Petition.

On April 23, 2018, the Court issued an Order scheduling hearing on Hunt's Answer for May 14, 2018. The Court served the Order setting hearing on Hunt, Elwin, and the U.S. Trustee.[15]

On May 4, 2018, Elwin filed a Motion to Continue,[16] which was denied by the Court on May 9, 2018.[17]  On May 11, 2018, Elwin filed a Motion to Reconsider denial of the continuance.[18]  The Court again denied continuance.

Hunt has fewer than twelve (12) creditors. Hunt is generally not paying his debts as they become due.

---

[13] P-9, Exh. 3, p. 19. March 2011 is the last month that the Worksheets show the monthly amount due as $234.00.

[14] P-9, 10.

[15] P-11. Hunt and Elwin were served by mail, and the U.S. Trustee was served electronically through the CM/ECF system. No other creditors were served because Elwin was the sole petitioning creditor and the only known creditor at the time.

[16] P-12.

[17] P-13.

[18] P-14.

The Court entered oral reasons and an Order on May 14, 2018, granting the Motion to Waive Filing Fee; dismissing the Petition; and denying punitive damages.[19]

## II. Conclusions of Law

### A. Requirements of an Involuntary Case

When a petitioning creditor files an Involuntary Petition, she must serve summons on the alleged debtor in accordance with F.R.B.P. 7004.[20] The alleged debtor has twenty-one (21) days after service of summons to file a response contesting the Involuntary Petition.[21]

> The court shall determine the issues of a contested petition at the earliest practicable time and forthwith enter an order for relief, dismiss the petition, or enter any other appropriate order.[22]

In requiring a hearing on a contested petition "at the earliest practicable time," F.R.B.P. 1013 "recognizes that the interests of both the debtor and the creditors are best served by prompt resolution of the issues raised by an involuntary bankruptcy petition."[23]

In the case of a contested Involuntary Petition, the court must hold a hearing to determine whether an Order for Relief should be entered. In the meantime, the debtor's reputation suffers. Creditors are also harmed because those who deal with the debtor between the filing of the Involuntary Petition and an Order for Relief (a "gap" creditor) are given third priority status, below

---

[19] P-17.

[20] F.R.B.P. 1010(a).

[21] F.R.B.P. 1011(b).

[22] F.R.B.P. 1013(a).

[23] 9 COLLIER ON BANKRUPTCY ¶ 1013.2 (Richard Levin & Henry J. Sommer eds., 16th ed.).

4

typical administrative claims.[24]  Payments to creditors on debts incurred prior to the filing may also be avoided and certain actions may be void *ab initio* if the filing is ultimately confirmed as appropriate.  The automatic stay pursuant to 11 U.S.C. § 362 comes into effect immediately upon the filing of an involuntary petition preventing creditors from pursuing legitimate claims.[25]  These effects occur during the gap period regardless of notice.

In accordance with F.R.B.P. 1013 and in order to mitigate harm to the alleged debtor, creditors, and third parties dealing with the putative debtor,  hearings on contested Involuntary Petitions are typically held on an expedited basis.

In the case at bar, Elwin filed the Petition on March 30, 2018.  Debtor timely filed his Answer on April 18, 2018.  Hunt's contact information on the Petition included only his mailing address and no telephone number.  Hunt's former counsel, who was listed by Elwin on the Petition, indicated to the Court he was not representing Hunt in connection with this matter.  Because Elwin failed to provide sufficient information on Hunt with her Petition, the Court was unable to reach him to schedule an expedited hearing.[26]  As a result, on April 23, 2018, the Court issued an Order scheduling the hearing for May 14, 2018, giving the parties twenty-one (21) days' notice of the hearing.[27]  The Court served the Order setting hearing on both Hunt, Elwin and the U.S. Trustee.[28]

---

[24] 11 U.S.C. § 502(f).

[25] *In re MortgageAmerica Corp.*, 714 F.2d 1266, 1273 (5th Cir. 1983).

[26] It is the Court's policy where practical to schedule expedited hearings only after contacting the parties to confirm availability.

[27] The majority of motions filed in Bankruptcy Court require twenty-one (21) days' notice to interested parties. F.R.B.P. 2002(a).

[28] P-11.

5

On May 4, 2018, Elwin filed a Motion to Continue,[29] which was denied by the Court on May

9, 2018.[30]   On May 11, 2018, Elwin filed a Motion to Reconsider denial of the continuance.[31]   The

Court again denied continuance in order to mitigate the harm to creditors and Hunt.

The filing of an Involuntary Petition forcing a party into bankruptcy is not taken lightly:

> Recognizing that involuntary bankruptcy is a particularly severe remedy, Congress
> limited the circumstances in which creditors may force a debtor into such a
> proceeding.  Section 303 of Title 11 permits creditors to file an involuntary petition
> against a debtor.  Ordinarily, a case under § 303 may be commenced only by three
> or more holders of qualifying claims; however, if the alleged debtor has fewer than
> twelve creditors, a single claimholder may file the petition.[32]

Elwin is the sole petitioning creditor.  Under 11 U.S.C. § 303(b)(2), an involuntary can be

filed by one (1) creditor if:

> 1) the debtor has fewer than 12 creditors;
>
> 2) the petitioning creditor has a claim of at least $15,775 that is not contingent as to liability
> or the subject of a bona fide dispute as to liability or amount; and
>
> 3) the petitioning creditor is not an employee or insider.

The petitioning creditor must also allege:

> (1) the debtor is generally not paying such debtor's debts as such debts become due
> unless such debts are the subject of a bona fide dispute as to liability or amount; or

---

[29] P-12.  Elwin's reason for continuance was to accompany her son on a school trip.  In light of the severity of the pending request, the Court did not deem this sufficient cause to further delay the hearing.

[30] P-13.

[31] P-14.

[32] *In re Green Hills Development Co., L.L.C.*, 741 F.3d 651, 655 (5th Cir. 2014).

(2) within 120 days before the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purposes of enforcing a lien against such property, was appointed to took possession.[33]

## 1. Fewer Than Twelve Creditors

Elwin asserts that Hunt has fewer than twelve (12) creditors.  Hunt testified that he has three (3) creditors: the IRS, Robert Harvey, and Elwin.  The Court finds that Hunt has fewer than twelve (12) creditors.

## 2. Generally Not Paying Debts as They Become Due

"The burden of establishing that a debtor is generally not paying [debts as they become due] rests upon the petitioning creditor."[34] Courts look at four (4) factors in determining whether an alleged debtor is generally not paying debts as they become due:

(1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in [his] financial affairs."[35]

Hunt is not paying monthly child support on a regular basis and is not paying tax debt to the IRS.  He is also not paying the fees due to his counsel.  The Court finds that Hunt is generally not paying his debts as they become due.

---

[33] 11 U.S.C. § 303(h).

[34] *In re CLE Corp.*, 59 B.R. 579, 585 (Bankr.N.D. Ga. 1986).

[35] *In re Moss*, 249 B.R. 411, 422 (Bankr.N.D.Tex. 2000) (citation omitted).

### 3.  Claim of at Least $15,775 that is Non-contingent nor the Subject of a Bona Fide Dispute

As the sole petitioning creditor, Elwin must establish that she has a claim against Hunt of at least $15,775 that is not contingent as to liability nor the subject of a bona fide dispute as to liability or amount.

Elwin claims that Hunt owes her $50,353 in accumulated court-ordered child support; $250,000 in damages for harassment and personal injuries; and $1,000,000 in damages for injury to her minor child for a total amount claimed of $1,300,353.

Elwin contends that the amount of child support due her per month is $712.00 as provided in the November 8, 2013, State Court Judgment.  However, new trial was granted on that Judgment, so no Judgment on the issue of increased support exists.[36]

The Fifth Circuit has adopted an objective standard for determining whether a bona fide dispute exists.  "Under that objective standard, the bankruptcy court must determine whether there is an objective basis for either a factual or legal dispute as to the validity of the debt."[37]

> [T]he petitioning creditor must establish a prima facie case that no bona fide dispute exists.  Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist. ... The court's objective is to ascertain whether a dispute that is bona fide exists; the court is not to actually resolve the dispute. ... Finally, because the determination as to whether a dispute is a bona fide will often depend ... upon an assessment of witnesses' credibilities and other

---

[36] "[T]he granting of a new trial has the effect of vacating and setting aside the original judgment."  *Gilley v. Wendy's, Inc.*, 31, 353 (La. App. 2 Cir. 12/9/98), 723 So.2d 517, 523 (citation omitted).

[37] *Matter of Sims*, 994 F.2d 2210, 221 (5th Cir. 1993).

8

factual considerations, the bankruptcy court's determination in this regard is a factual finding that may be overturned on appeal only if it is clearly erroneous.[38]

"Bankruptcy courts routinely consider the existence and character of pending but unresolved litigation as evidence of a bona fide dispute."[39]  The granting of  new trial on the amount of child support indicates that there is merit to justify recalculating the monthly award.  New trial was granted on the amount of child support but has not been held.[40]

Hunt contends that the new trial has been continued several times due to his inability to serve Elwin.  He asserts that new trial will be held on May 23, 2018.[41]  Until there is ruling by the State Court as to the monthly child support award, the amount due Elwin cannot be calculated based on a monthly amount due of $712.00 and instead must be calculated using the $234.00 per month awarded on April 26, 2011.

Based on Worksheets prepared by the Child Support Enforcement Division of the Orleans Parish District Attorney's Office submitted by Hunt, in March 2011 Hunt owed $2,506.49 in back child support.[42]

Based upon the only enforceable child support award in existence at this time of $234.00 per month, Hunt was required to pay $2,106 from April through December 2011; $2,808 in 2012; and

---

[38] *Matter of Sims*, 994 F.2d at 221 (quoting *In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991)).

[39] *In re Green Hills Development Co., L.L.C.,* 741 F.3d at 659 (citation omitted).

[40] P-9, ¶ 13 and Exh. 2; P-12, p. 3 and Exh. A.

[41] P-9,  ¶ 13.  The Court is unaware whether new trial was held on that date.

[42] P-9, Exh. 3, p. 19.  March 2011 is the last month that the Worksheets show the monthly amount due as $234.00.

$2,808 in 2013 for a total of $7,722 in child support.  When added to amount of past due child support owed, Hunt owed a total of $10,228.49 through 2013.

Hunt paid Elwin a total of $10,507 from April through December 2011; 2012; and 2013:

1. $3,488.51[43] from April through December 2011;

2. $4,043.71 in 2012; and

3. $3,024.78 in 2013.

Therefore, as of December 31, 2013, Hunt was owed a credit of $278.51.

Elwin alleges that Hunt made no child support payments in 2014, 2015, and 2016. In 2017 and 2018, he paid $188.00.  At the hearing, Hunt did not contest the preceding summary of his child support payments or obligations. The Court concludes that Elwin has a maximum child support claim of $11,935.49 that is not subject to a bona fide dispute.[44]

Elwin also asserts a claim for $250,000 in damages for harassment and personal injuries as well as $1,000,000 in damages for injury to her minor child.  The claims are disputed and unliquidated.  Elwin produced no evidence to support these claims which are contested by Hunt. The Court finds that she did not meet her burden of establishing a prima facie case that no bona fide dispute exists as to these charges.[45]

---

[43] The Court verified it calculations completed on the bench during the hearing, and concluded that the amount stated in Court, $3,103.51, was incorrect.  This correction affects subsequent calculations, and the numbers have been changed accordingly.

[44] Debtor was awarded $15,000 in damages in a civil suit, but because of past due child support, the payee on the check is Child Support Enforcement.   The check is being held in the trust account of Hunt's counsel in the state proceeding pending new trial on the amount of child support due.  This payment will reduce any amounts owed Elwin.

[45] Because Elwin did not meet her initial burden of proof, the burden did not shift to Hunt. *See Matter of Sims*, 994 F.2d at 221.

10

### B.  Punitive Damages

Hunt made an oral motion for punitive damages.  Section 303(i)(1) provides:

If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-

(1) against the petitioners and in favor of the debtor for-

     (A) costs; or

     (B) a reasonable attorney's fee; ...

The decision to award attorney's fees and costs is at the court's discretion.[46]

Elwin has received only $188.00 in child support in four (4) years.  She is close to the statutory amount required and is not represented by counsel.  Therefore, the Court will not award punitive damages.

### C.  Waiver of Filling Fee

The statutory fee for filing a Petition under Chapter 7 of the Bankruptcy Code is $245.00.[47]

The statute does not distinguish between commencement a voluntary or involuntary case.

This Court has discretion under 28 U.S.C. § 1930(f)(3) to waive the filing fee in any case.[48]

The Court will grant Elwin's Motion to Waive Filing Fee.

---

[46] *In re Green Hills Development, L.L.C.*, 741 F.3d at 661.

[47] 28 U.S.C. § 1930(a)(1).

[48] 28 U.S.C. § 1930(f)(3) provides:

This subsection does not restrict the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors.

### III.  Summary

For the Reasons assigned above, the Court finds that Elwin does not meet the statutory requirements under 11 U.S.C. § 303 to institute an involuntary proceeding as a petitioning creditor. Therefore, dismissal of the Petition is appropriate under F.R.B.P. 1013(a).

The Court will not award punitive damages.

Elwin's filing fee will be waived.

A separate Order was entered on May 14, 2018, in accord with these Reasons.[49]

New Orleans, Louisiana, July 24, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[49] P-17.